IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael Cottone, | ) | C/A No. 0:24-376-JDA-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Warden Janson, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Michael Cottone, a self-represented federal prisoner, filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter is before the court pursuant to 28 U.S.C. § 636 and Local Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Respondent's motion to dismiss or, in the alternative, for summary judgment. (ECF No. 18.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. (ECF No. 19.) Petitioner filed a response in opposition. (ECF No. 25.) Having carefully considered the parties' submissions and the record in this case, the court concludes that Respondent's motion should be granted.

BACKGROUND

The following facts are either undisputed or taken in the light most favorable to the petitioner, to the extent they find support in the record. Petitioner is an inmate in the Federal Correctional Institution Edgefield of the Federal Bureau of Prisons ("BOP"). On August 11, 2022, an FCI Edgefield staff member conducted a search of Petitioner's cell, which he shared with one other inmate, and found "an eight-inch-long sharpened piece of hardened metal . . . that was sharpened to a point at one end" underneath the top lip of one of the metal lockers. The officer

reported that Petitioner identified the locker as his and admitted to knowing the weapon was there. Petitioner was charged with possessing a dangerous weapon. He received a copy of the incident report and was advised of his rights the same day. When advised of his rights, Petitioner stated the weapon was not his.

A unit disciplinary committee hearing was held on August 15, during which Petitioner stated he had recently been relocated to that cell and did not know the weapon was there. The matter was forwarded to a disciplinary hearing officer ("DHO") and Petitioner received notice of the hearing and of his rights. Both at and before the August 18 disciplinary hearing, Petitioner waived his rights to a staff representative and to present witnesses and evidence. At the hearing, Petitioner admitted the weapon belonged to him. Considering Petitioner's admission, the officers' reports, and portions of the inmate handbook, the DHO found Petitioner guilty of the charge and revoked forty-one days of good conduct credit, among other sanctions. Petitioner exhausted his administrative appeals.

Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in January 2024, raising the following grounds for relief:

| | |
|---|---|
| **Ground One:** | Due Process: This was a violation of Program Statement 1380.05 (selective prosecution) |
| **Supporting Facts:** | I repeatedly told "DHO," the south east regional office, and central office the item was not mine and it was found in a common area. They never reviewed cameras to see if anyone went in to cell that wasn't assigned there and I was moved to the cell a week prior not by choice and no cell search was done before move. |
| **Ground Two:** | Due Process: This was a violation of Program Statement OPI : CPD/CSB 5270.09 |
| **Supporting Facts:** | DHO had plenty of time to give (issue) my D.H.O. packet. So I could have expressed my administrative remedy process, but failed to do so. |

| | |
|---|---|
| **Ground Three:** | DHO Coerced Me |
| **Supporting Facts:** | DHO refused to interview other inmate, DHO coerced me by telling me "shot" would be put on shelf and I would not have my custody points raised, would not get shipped or lose any good time if I stayed out for trouble for six (6) months. |
| **Ground Four:** | No cell search performed or interview of other inmate who lived in cell |
| **Supporting Facts:** | Prior to being moved into cell, staff did not search cell I only lived in cell for 9 days before incident. During DHO process "DHO" refused to interview other inmate who was assigned cell. |

(Pet., ECF No. 1) (errors in original). Petitioner asks the court to expunge the charge from his record and restore his good conduct credit. (Id. at 10.)

## DISCUSSION

**A.     Applicable Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the pleading.[1] Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). When considering motion to dismiss, the court must accept as true all of the factual allegations contained in the pleading. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

---

[1] The Federal Rules of Civil Procedure apply to petitions for a writ of habeas corpus to the extent the rules are not contradicted by federal statute or previous practice in habeas proceedings. Fed. R. Civ. P. 81(a)(4); see, e.g., Walker v. Kelly, 589 F.3d 127, 138-39 (4th Cir. 2009) ("In proceedings under § 2254, the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss.").

The court may also consider documents attached to the pleading, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the pleading and authentic. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Erickson, 551 U.S. 89, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

By contrast, summary judgment under Rule 56 is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Erickson v. Pardus, 551 U.S. 89 (2007), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Generally**

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973); see also Jones v. Hendrix, 599 U.S. 465, 475 (2023) (reaffirming the availability of § 2241 to challenge the legality of the inmate's detention, rather than the validity of his sentence). The proper means of attacking the validity of a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255, while a petition for habeas corpus under § 2241 is generally the proper method to challenge the computation or execution of a federal sentence. See United States v. Little, 392 F.3d 671, 678-79 (4th Cir. 2004); United States v. Miller, 871 F.2d 488, 489-90 (4th Cir. 1989) (distinguishing between attacks on the "computation and execution of the sentence rather than the sentence itself").

C.    **Respondent's Motion**

Petitioner argues he was denied due process in his disciplinary proceedings because he was subject to selective prosecution and coercion by the DHO, and the DHO failed to interview other inmates, perform a cell search, or view security camera footage. He further alleges the DHO's report was issued late, in violation of BOP policy. Respondent contends Petitioner's disciplinary proceedings were legally sufficient.

Disciplinary proceedings that implicate a protected liberty interest demand due process. Wolff v. McDonnell, 418 U.S. 539 (1974). To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of life, liberty, or property by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Here, Petitioner alleges the loss of good conduct time, which implicates a protected liberty interest. See Wolff, 418 U.S. at 557.

In Wolff, the United States Supreme Court held that where a disciplinary hearing affects a liberty interest, inmates must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (3) a written statement by the fact finders of the evidence relied on and the reasons for the disciplinary action; and (4) a fair and impartial tribunal. Wolff, 418 U.S. at 563-67. Due process is satisfied as long as there is "some evidence" supporting the disciplinary hearing officer's findings. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445 (1985). "Ascertaining whether this [due process] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

The pleadings and attachments show Petitioner received written notice of his charges shortly following the incident (Respt.'s Mot. Summ. J. Ex. 1 Attach. A, ECF No. 18-1 at 4), the opportunity to present witnesses and documentary evidence at the disciplinary hearing (id. Attachs. B & C, ECF No. 18-1 at 8, 10), and a written report from the impartial DHO listing the evidence relied on and reasons for the decision (id. Attach. D, ECF No. 18-1 at 12-15). These facts are not in dispute.[2]

Rather, Petitioner alleges error in the DHO's findings. He asserts the DHO "refused" to interview his cellmate or view video footage. (Petr.'s Resp., ECF No. 25 at 2.) While "a disciplinary board's factual findings or decisions with respect to appropriate punishment are [not] subject to second-guessing upon review," Hill, 472 U.S. at 455, Petitioner's allegation that prison officials refused to consider video footage requires attention.

In the United States Court of Appeals for the Fourth Circuit, under Wolff, "inmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain and present video surveillance evidence." Lennear v. Wilson, 937 F.3d 257, 262 (4th Cir. 2019). Thus, "upon request, an inmate is entitled to access prison video surveillance evidence pertaining to his or her disciplinary proceeding unless the government establishes that disclosure of such evidence would be, under the particular circumstances of the case, 'unduly hazardous to institutional safety or correctional goals.' " Id. at 269 (quoting Wolff, 418 U.S. at 566).

---

[2] Petitioner alleges the disciplinary hearing report was not issued within fifteen days of the hearing, as required by BOP policy. (Pet., ECF No. 1 at 9.) However, a violation of internal BOP policy does not equate to a due process violation. See Clark v. Mosley, Civil Action No. 6:17-219-RMG, 2017 WL 5027347, at *3 (D.S.C. Oct. 30, 2017) (finding the petitioner's claims that BOP violated its own policy in a disciplinary hearing insufficient to raise a cognizable constitutional issue in § 2241 action). Further, despite the allegedly untimely report, Petitioner was able to successfully and fully exhaust his administrative remedies and thus suffered no prejudice.

Here, Petitioner argues video footage would have shown he had just recently moved into the cell, the previous occupant had lived there for over a year, and other people had access to the locker where the weapon was found. (Petr.'s Resp., ECF No. 25 at 2.) While Petitioner now asserts the DHO "refused" to view video evidence, he does not allege he ever requested such evidence. Nor is any request for video evidence apparent from the record of the disciplinary proceedings. Rather, Petitioner was offered the opportunity to present evidence at the hearing and waived that right. He also waived his right to a staff representative and, when provided the opportunity to speak at the hearing, Petitioner admitted the weapon was his. (See Respt.'s Mot. Summ. J. Ex. 1 Attachs. B-D, ECF No. 18-1 at 7-15.) Further, Petitioner's administrative appeals allege only that the DHO failed to issue his report on time and make no mention of video surveillance evidence. (See Pet., ECF No. 1 at 2-5.) Petitioner thus fails to show he requested and was denied access to video surveillance evidence.

Moreover, any failure by the DHO to consider the alleged video surveillance evidence was harmless. "[I]n evaluating whether prison officials' failure to disclose or consider evidence was harmless, courts must determine whether the excluded evidence could have aided the inmate's defense." Lennear, 937 F.3d at 277. Petitioner alleges the video would have shown that "more than just one inmate had access to the unlocked locker" where the weapon was found. (Petr.'s Resp., ECF No. 25 at 2.) He specifically points to the cell's prior occupant, whom he alleges lived there for over a year and had access to knives through his work in the kitchen. (Id. at 2-3.)

However, the DHO knew Petitioner shared a cell with another inmate and based his decision, in part, on the Inmate Handbook's guidance that each inmate is held responsible for all contents of his locker and subject to disciplinary action for any contraband found within. (See Respt.'s Mot. Summ. J. Ex. 1 Attach. D, ECF No. 18-1 at 14.) Under this policy, because the

weapon was found in Petitioner's locker, Petitioner was responsible for it, whether a limited number of other people had access to the locker or not. Courts have routinely upheld such prison policies regarding constructive possession. See McClung v. Shearin, 90 F. App'x 444, 446 (4th Cir. 2004) ("Constructive possession provides 'some evidence' of guilt only when relatively few inmates have access to the area."); McClung v. Hollingsworth, No. 06-6699, 2007 WL 1225946, at *3 (4th Cir. Apr. 26, 2007) (slip op.) (finding "the constructive evidence rule provides the necessary 'some evidence' sufficient" to sustain the petitioner's disciplinary conviction where "a dangerous weapon was discovered in a cell that was the 'exclusive domain' of the petitioner and his cellmate); Mederos v. Warden, FCI Edgefield, C/A No. 4:19-2770-BHH-TER, 2020 WL 4289612, at *5, n.3 (D.S.C. July 6, 2020) (noting "[i]nmates are held responsible for contraband found in areas under their control" and finding some evidence for constructive possession where the petitioner shared cell with only one other inmate), R&R adopted by 2020 WL 4435511 (D.S.C. July 31, 2020). The DHO also relied on Petitioner's own admission to the original officer that the locker was his and admission at the hearing that the weapon was his.[3] (See Resp't Mot. Summ. J, Attach. D, ECF No. 18-1 at 12-14.) Accordingly, video evidence showing that Petitioner's cellmate and the former occupant of the cell also had access to the locker would not have aided in Petitioner's defense.

---

[3] Petitioner claims he was coerced into pleading guilty to the disciplinary charge by promises of lesser sanctions in exchange for a plea. (Pet., ECF No. 1 at 9.) Petitioner offers no evidence to support this claim and his present assertion of innocence is not by itself sufficient to support habeas relief. See Rojas-Parra v. Warden, C/A No. 13-1581-TMC, 2014 WL 2548352, at *7 (D.S.C. June 6, 2014) (in the prison disciplinary context, "a claim of actual innocence is not a basis for federal habeas corpus relief"). Further, even without Petitioner's admission, the DHO's decision was supported by "some evidence"—the incident report and the Inmate Handbook.

While Petitioner disagrees with the DHO's findings, his disciplinary proceedings complied with the due process safeguards outlined in <u>Wolff</u> and there was "some evidence" to support the DHO's decision. Petitioner's claim that he was denied due process is without merit.

## RECOMMENDATION

For the foregoing reasons, the court recommends that Respondent's motion for summary judgment (ECF No. 18) be granted and the petition denied.

_____
September 20, 2024                    Paige J. Gossett
Columbia, South Carolina              UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).